UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVE ARNDT,

         CASE NO. 1:22-cv-00112-JTN-SJB

     Plaintiff,

v                       HON. JANET T. NEFF

L. PERRIGO COMPANY,

     Defendant,

---

| WILLIAM F. PIPER, PLC | WARNER NORCROSS + JUDD LLP |
|---|---|
| William F. Piper (P38636) | Edward J. Bardelli (P53849) |
| Attorney for Plaintiff | Jarrod H. Trombley (P83517) |
| 1611 W. Centre Street, Ste. 209 | Attorneys for Defendant |
| Portage, MI 49024 | 150 Ottawa Ave NW, Ste. 1500 |
| (269) 321-5008 | Grand Rapids, MI 49503 |
| (269) 321-5009 (facsimile) | (616) 752-2000 |
| wpiper@wpiperlaw.com | (616) 752-2500 (facsimile) |
| | ebardelli@wnj.com |
| | jtrombley@wnj.com |

---

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant L. Perrigo Company ("Perrigo"), by its attorneys, Warner Norcross + Judd LLP, respectfully requests that this Court grant summary judgment in this matter pursuant to Fed. R. Civ. P. 56(c) and dismiss all of Plaintiff's claims with prejudice because there are no genuine issues of material fact and Perrigo is entitled to judgment as a matter of law.  These arguments are supported by the accompanying Brief in Support, deposition testimony, and related exhibits.

Dated:  February 13, 2023

*/s/ Jarrod H. Trombley*

Edward J. Bardelli (P53849)
Jarrod H. Trombley (P83517)
WARNER NORCROSS + JUDD LLP
150 Ottawa Avenue NW, Ste. 1500
Grand Rapids, MI 49503
(616) 752-2000
ebardelli@wnj.com
jtrombley@wnj.com

*Attorneys for Defendan*t

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVE ARNDT,

        Plaintiff,

v

L. PERRIGO COMPANY,

        Defendant,

CASE NO. 1:22-cv-00112-JTN-SJB

HON. JANET T. NEFF

---

WILLIAM F. PIPER, PLC
William F. Piper (P38636)
Attorney for Plaintiff
1611 W. Centre Street, Ste. 209
Portage, MI 49024
(269) 321-5008
(269) 321-5009 (facsimile)
wpiper@wpiperlaw.com

WARNER NORCROSS + JUDD LLP
Edward J. Bardelli (P53849)
Jarrod H. Trombley (P83517)
Attorneys for Defendant
150 Ottawa Ave NW, Ste. 1500
Grand Rapids, MI 49503
(616) 752-2000
(616) 752-2500 (facsimile)
ebardelli@wnj.com
jtrombley@wnj.com

---

# DEFENDANT'S BRIEF IN SUPPORT OF ITS
# MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND .................................................................................................................... 1

STANDARD OF REVIEW ....................................................................................................... 7

ARGUMENT ......................................................................................................................... 7

     I.     ARNDT'S REGARDED AS DISABLED DISCRIMINATION CLAIM SHOULD BE DISMISSED ....................................................................................7

     II.    ARNDT'S AGE DISCRIMINATION CLAIM SHOULD BE DISMISSED ...................................................................................................11

CONCLUSION.................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Alexander v. CareSource*,
    576 F.3d 551 (6th Cir. 2009) ...................................................................7

*Bailey v. Real Time Staffing Servs., Inc.*,
    543 F. App'x 520 (6th Cir. 2013).........................................................8, 10, 11, 14

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).............................................................................7

*Coultas v. Carlisle Brake & Friction, Inc.*,
    801 F. App'x 937 (6th Cir. 2020)............................................................14

*Flones v. Beaumont Health Sys.*,
    567 F. App'x 399 (6th Cir. 2014)............................................................12

*Gecewicz v. Henry Ford Macomb Hosp. Corp.*,
    683 F.3d 316 ....................................................................................10

*Hrdlicka v. Gen. Motors, LLC*,
    No. 22-1328, 2023 WL 1794255 (6th Cir. Feb. 7, 2023) ........................................9

*Khatri v. Ohio State Univ.*,
    No. 21-3193, 2022 WL 620147 (6th Cir. Jan. 25, 2022), cert. denied, 214 L.
    Ed. 2d 85, 143 S. Ct. 248 (2022) ............................................................9

*Lewis v. City of Detroit*,
    702 F. App'x 274 (6th Cir. 2017)..........................................................12, 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).............................................................................7

*Parry v. Mohawk Motors of Michigan, Inc.*,
    236 F.3d 299 (6th Cir. 2000) ................................................................10

*Pena v. City of Flushing*,
    651 F. App'x 415 (6th Cir. 2016)............................................................9

*Saenz v. Kohl's Dep't Stores, Inc.*,
    834 F. App'x 153 (6th Cir. 2020)............................................................7

Page(s)

*Thompson v. Fresh Prod., LLC*,
    985 F.3d 509 (6th Cir. 2021) ................................................................................11

*Williams v. AT&T Mobility Servs. LLC*,
    847 F.3d 384 (6th Cir. 2017) ................................................................................8, 9

**Federal Statutes**

42 U.S.C. § 12102(3)(A)................................................................................................9

42 U.S.C. § 12114........................................................................................................8

42 U.S.C. § 12114(a) ...................................................................................................8

42 U.S.C. § 12114(c)(1)...............................................................................................8

42 U.S.C. § 12114(d)(2)...............................................................................................8

**State Statutes**

MCL 333.27954(3) .......................................................................................................8

**Rules**

Fed. R. Civ. P. 56(c) ....................................................................................................7

## INTRODUCTION

This is an employment case. Plaintiff Steve Arndt ("Arndt") was employed at Defendant L. Perrigo Company ("Perrigo") from 2000 until May 2021 when he was discharged for failing a random drug test that was administered in accordance with Perrigo's well established and clearly stated Drug-Free Workplace policy ("Drug Policy"). In response, Arndt claimed Perrigo did not discharge him because he failed a random drug test.  He instead claims he was discharged because of his age and because Perrigo considered him a regular drug user or addict and therefore regarded him as disabled.  There is no evidence supporting Arndt's assertions. Rather, all evidence points to the fact that the sole decision maker here, Human Resources Manager Mersiha Ceric ("Ceric"), discharged Arndt purely because he failed a random drug test. Furthermore, there is no evidence that anyone discriminated against Arndt because of his age. The only person Arndt alleges to have engaged in age discrimination is his former supervisor Engineering Vision Team Lead Jon Laue ("Laue"), who, as the facts bear out, was not even involved in the decision to discharge Arndt. For these reasons, Perrigo respectfully requests that this Court grant its motion for summary judgment and dismiss this case in its entirety.

## BACKGROUND

### Arndt's Employment at Perrigo

In 2000, Perrigo hired Arndt as a facilities electrician, and in that role, he was primarily responsible for troubleshooting machinery and performing maintenance and general electrician duties. (**JE 1**, Steve Arndt Deposition, 11-13.) In approximately 2013, he was promoted to a vision system technician role where he was responsible for maintaining and installing Perrigo's system that photographed labels on bottles distributed by Perrigo – the Vision System. (*Id.*, 14, 16-17.) During his last few years of employment with Perrigo, Arndt's duties changed to become more

focused on automation, which required him to focus more on computers, software, and programing related to the Vision System. (*Id.*, 17-18.)

**Arndt's 2020 Performance Review**

In or around 2020, Laue became Arndt's supervisor and continued in that role until Arndt's discharge in May 2021. (*Id.* 17-18.) During that time, Laue found Arndt very knowledgeable but believed he lacked initiative, needed additional training, and failed to exercise ownership over projects.  Accordingly, Laue rated Arndt's 2020 performance as having "Met" expectations but drafted performance review comments that described his performance as a "Low Meets." (**JE 2,** Arndt 2020 Review.) Laue's supervisor, Senior Engineering and Maintenance Manager Nate Wood, approved this review stating that he and Laue "are aligned on the review." (**JE 3**, 2/25/2021 Email from Wood to Ceric.)

Arndt disagreed with his 2020 performance review (JE 1, 47), and that eventually led to Laue sending Arndt a memorandum explaining his reasoning for it.  In the memorandum, Laue recalled instances where Arndt expected others to take on work for which he was ultimately responsible and noted that his review of Arndt's performance was similar to reviews from Arndt's previous supervisor.  Specifically, that supervisor also told Arndt that he should focus on obtaining additional vision system training and exercising ownership over vision projects on which he was working. (**JE 4**, 3/2/2021 Memorandum from Laue to Arndt.)

Neither Laue's review of Arndt's performance nor memorandum explaining it gave any indication that he intended to discharge Arndt, and importantly, Arndt admitted Laue never said that. (JE 3; JE 4; JE 1, 48.) On the contrary, in Arndt's 2020 review, Laue stated that despite Arndt having received a "Low Meets" rating, he sees "a bunch of up side potential." (JE 3.) In the memorandum, Laue stated, "I value your experience and Perrigo knowledge which has been a great reference point for our team." (JE 4.) He also repeatedly stated, "I am committed to your

success[.]" (*Id.*)  Importantly, Laue never mentions Arndt's age in either of those documents or elsewhere.

**Perrigo's Random Drug Testing Policy**

Perrigo's employee handbook contains its Drug Policy. (**JE 5**, Perrigo Hourly Employee Handbook, 34-35.) There, it explicitly states that "as a condition of employment, you will be subject to random drug tests." (*Id.*, 35, ¶ 3.) The random drug testing policy also states that "[t]esting positive for alcohol or drugs will result in termination of your employment, except where prohibited by law." (JE 5, 35, ¶ 3.)  Arndt admitted he was aware of the Drug Policy and its requirements. (JE 1, 20.) In fact, he completed training on it in 2019 and 2020. (**JE 6**, Arndt Trainings on Drug-Free Workplace & Control of Perrigo Products.) Further, in 2019 Arndt was randomly drug tested, passed it, and kept his job. (**JE 7**, Arndt 9/26/2019 Drug Test Results.)

Ceric and Heather Higby ("Higby"), a Payroll and Leave Clerk at Perrigo, explained the random drug test selection process at Perrigo during their depositions. (**JE 8**, Mersiha Ceric Deposition, 12; **JE 9**, Heather Higby Deposition, 10-11.)  To begin the process, once a month, Higby pulls a roster of all Perrigo employees within scope and sends it to its third-party vendor, Alternative Safety & Testing Solutions ("ASTS") that oversees Perrigo's random drug testing program. (JE 9, 15-16.) To produce its monthly report, which is typically about a page-and-a-half long, ASTS assigns each employee a number then uses an algorithm that randomly selects employees to test.  It then delivers the report to Higby. (JE 8, 23-24; JE 9, 15-17.) After receiving the report, Higby schedules drug screens for the listed employees. She also notifies each employees' supervisor who in turn informs the listed employees of the need to report for a random drug screening. (JE 9, 16.)

The listed employees must immediately report to the onsite Perrigo Medical Center, operated by Premise Health of Michigan Medical, P.C. ("Premise Health"), to provide a sample

for testing. (JE 9, 27, 34.) Premise Health obtains that sample then sends it for testing to Quest Diagnostics who, after testing, sends the results to ASTS. (*Id.* at 27.) ASTS sends the results to Higby who reviews and files them. (*Id.* at 16.) If there any positive test results, Higby sends them to the HR Manager for the area. (*Id.*) The HR Manager then informs the employee of the positive test result and tells them to expect a call from a Medical Review Officer ("MRO") at ASTS to confirm the results of the test. (JE 8, 30-31.) Once the MRO confirms a positive test result, the employee is discharged. (*Id.* at 30.) There are no exceptions and no appeals. (*Id.*) Perrigo's policy in this regard is so well known that Dr. Bradley Friedland ("Dr. Friedland"), an MRO at ASTS, even stated that "Perrigo's drug policy is a one strike and you're out." (**JE 10**, Dr. Bradley Friedland Deposition, 36.)

**Arndt's Failure of the Random Drug Test and Termination from Perrigo**

On May 3, 2021, ASTS sent Higby a Random Selection Notice identifying Arndt, among others, for random drug testing. (JE 9, 28; **JE 11**, 5/3/2021 ASTS Random Selection.) Higby scheduled Arndt's test for May 10, 2021 at 3:00 p.m., and on May 6, 2021, Higby emailed Laue informing him of the scheduled testing. (**JE 12**, 5/6/2021-5/10/2021 Emails between Higby and Laue.) As directed by Higby, Laue informed Arndt of the need for testing on the same day that the test was scheduled and subsequently emailed Higby informing her that Arndt was on his way to the testing facility. (*Id.*; JE 1, 19-20.) Arndt then went to the Perrigo Medical Center and took the test. (JE 1, 21.)

Premise Health provided Arndt's test sample to Quest Diagnostics ("Quest") who performed the analysis. (JE 9, 27.) Quest determined that Arndt's sample contained marijuana above the confirm level, which resulted in a positive test result. Quest then sent the results to ASTS. (JE 10, 13, 20; **JE 13**, Quest Diagnostics Laboratory Results.)

On May 17, 2021, ASTS delivered the test results to Higby who informed Ceric of the positive test. (JE 8, 30.) Ceric called Arndt that same day to inform him of the test result and to tell him not to report to work.  (JE 8, 31; JE 1, 33.) She also said he should expect a call from the MRO. (JE 8, 31.)

Dr. Friedland, the MRO, then called Arndt to discuss the results of the test, determine whether prescription drugs Arndt may have taken could have produced a positive result, and to tell Arndt that he would have to report a positive drug test to Perrigo. (JE 1, 25-27; JE 10, 10, 12, 14.) During this call, Arndt told Dr. Friedland that he does not use marijuana. (*Id.*) Later that day, Arndt claimed he realized he used lip balm containing hemp oil that he believed could have caused his positive test result, so he called Dr. Friedland to report this. (JE 1, 26, 29-32; JE 10, 12, 15.) Dr. Friedland explained to Arndt that regardless of whether that was the case, "there's not a whole lot [Arndt] could do" and that "companies don't accept that kind of explanation." (JE 10, 17.) He further stated that "just because something is either legal or available or possibly contaminating substances [sic] that he may have used doesn't avoid [Perrigo's] policy. It's a fairly strict policy." (*Id.* at 24.) Accordingly, on May 17, 2021, Dr. Friedland verified the positive test and sent it to Higby who in turn sent it to Ceric. (**JE 14**, Arndt 5/10/2021 Drug Test Results; **JE 15**, 5/17/2021 email from Higby to Ceric.)

After the MRO's verification, Ceric called Arndt and informed him that she was terminating his employment because he failed the random drug test. (JE 1, 27-28.) Ceric never stated that she or anyone else at Perrigo believed Arndt was a drug addict or impaired.  In fact, she had no opinion on whether he was intoxicated or impaired, and no one reported to her that Arndt was intoxicated or impaired at work. (JE 1, 28; JE 8, 14-16, 29.) Rather, during this call, she merely told Arndt that Perrigo's "policy was to terminate if there was a positive drug test." (JE 1, 28.)

Arndt's discharge was not related to his workplace performance or conduct.  He was discharged solely because he tested positive for marijuana.  (JE 8, 14.) Ceric sent Arndt a termination letter the same day stating the following: "On Monday, May 17, 2021, Perrigo received confirmation of a positive test result. As stated in the Perrigo Handbook, testing positive for alcohol or drugs will result in termination of your employment, except where prohibited by law." (**JE 16**, 5/17/2021 Termination Letter.) Ceric, and only Ceric, made the decision to terminate Arndt's employment. (*Id.*)

Around this time, Ceric also let Laue and Wood know about Arndt's failed drug test and said she would be terminating Arndt's employment as a result. (**JE 17**, 5/17/2021 email from Wood to Ceric.) Neither Laue nor Wood were involved in the decision to terminate Arndt's employment.  Ceric merely informed them this was happening. In fact, Laue and Arndt never spoke to each other about the results of the drug test. (JE 1, 41-42.) Importantly, Arndt admitted he had no evidence to suggest that Laue was involved in administering Perrigo's random drug testing policy or in the selection process for the random drug test. (*Id.* at 23.)[1]

On May 18, 2021, despite having already discussed this issue with Dr. Friedland, Arndt contacted Ceric to tell her about the potential effect the Blistex lip balm he claimed he used had on his test. Ceric told him she would follow up and subsequently asked Higby to do so. (JE 8, 33-34.) Later that day, Dr. Friedland emailed Higby restating what he had already told Arndt which was that Arndt "tested positive" and that Perrigo "probably still must deem the test positive and disregard" Arndt's arguments regarding Blistex.  (**JE 18**, 5/18/21 email from Friedland to Higby.)

---

[1] Arndt knows that Laue was not involved in the decision to terminate him, which is one of the reasons he never even attempted to depose Laue in this matter.

6

## STANDARD OF REVIEW

"Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). (Quoting Fed. R. Civ. P. 56(c)). "No genuine issue of material fact exists where 'the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.'" *Saenz v. Kohl's Dep't Stores, Inc.,* 834 F. App'x 153, 155 (6th Cir. 2020) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). "[T]he party opposing summary judgment must show that she *can* make good on the promise of the pleadings by laying out enough evidence that *will be* admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary." *Id.* (emphasis in original) (quoting *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009)).

## ARGUMENT

### I. ARNDT'S REGARDED AS DISABLED DISCRIMINATION CLAIM SHOULD BE DISMISSED

Arndt claims that instead of being discharged for failing a random drug test, Perrigo discharged him because "it regarded him as an impaired drug addict and drug user." (PageID.5, Compl. ¶ 23.) To be clear, Michigan has no law governing random drug testing in private employment. Therefore, a Michigan employer can discharge an employee for violating its policies on the matter. For example, though the Michigan Regulation and Taxation of Marihuana Act decriminalizes the use and possession of marijuana in certain instances, it:

> does not require an employer to permit or accommodate conduct otherwise allowed by this act in any workplace or on the employer's property. This act does not prohibit an employer from disciplining an employee for violation of a workplace drug policy or for working

7

> while under the influence of marihuana. This act does not prevent an employer from refusing to hire, discharging, disciplining, or otherwise taking an adverse employment action against a person with respect to hire, tenure, terms, conditions, or privileges of employment because of that person's violation of a workplace drug policy or because that person was working while under the influence of marihuana.

MCL 333.27954(3). Federal law allows for similar testing and discharge. 42 U.S.C. § 12114(a) ("For purposes of this subchapter, a qualified individual with a disability shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use."); *Id.* § 12114(c)(1) ("A covered entity may prohibit the illegal use of drugs and the use of alcohol at the workplace by all employees"); *Id.* § 12114(d)(2) ("Nothing in this subchapter shall be construed to encourage, prohibit, or authorize the conducting of drug testing for the illegal use of drugs by job applicants or employees or making employment decisions based on such test results.") *See also Bailey v. Real Time Staffing Servs., Inc.*, 543 F. App'x 520, 524 (6th Cir. 2013) ("The ADA allows employers to perform drug testing. See 42 U.S.C. § 12114.") Thus, unless Arndt can show that Perrigo engaged in some specific wrongful conduct not related to a random drug screen, he has no claim. He cannot, however.  Therefore, this Court should grant Perrigo summary judgment and dismiss Arndt's regarded as disabled discrimination cause of action.

Where there is no direct evidence of discrimination, as is the case here, the Sixth Circuit analyzes "disability-discrimination claims under the *McDonnell Douglas* burden-shifting framework." *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 395 (6th Cir. 2017). In the regarded as disabled discrimination context, to establish a prima facie case, a plaintiff must show that: (1) defendant regarded him as disabled; (2) he is otherwise qualified for the job, with or without reasonable accommodation; and (3) he suffered an adverse action because of his disability. *Pena v. City of Flushing*, 651 F. App'x 415, 419 (6th Cir. 2016). A person is regarded as having a

disability if the employer perceives them as having a "physical or mental impairment whether or not the impairment [...] is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). "If the plaintiff makes out a prima facie case, the burden then shifts to the employer to demonstrate that there was a legitimate, nondiscriminatory reason for the adverse employment action. The plaintiff must then show that the reason given by the employer was actually a pretext designed to mask unlawful discrimination." 847 F.3d at 395 (internal citations omitted.)[2]

Here, Arndt cannot establish even the first element of his prima facie requirement. He has offered no evidence that anyone at Perrigo believed he had any physical or mental impairment at all. *See Khatri v. Ohio State Univ.*, No. 21-3193, 2022 WL 620147, at *3 (6th Cir. Jan. 25, 2022), cert. denied, 214 L. Ed. 2d 85, 143 S. Ct. 248 (2022) (holding that where plaintiff failed to "put forth sufficient facts to demonstrate that he was perceived as disabled" the plaintiff fails "to establish an element of [the] ADA" prima facie case and the plaintiff's claim fails.)

To the contrary, Ceric, the sole decision maker in Arndt's discharge, stated she had no opinion on whether he was intoxicated or impaired, and no one reported any such statements to her.  (JE 1, 28; JE 8, 14-16, 29.) Further, and importantly, no one at Perrigo ever stated to Arndt that they believed he was a drug user or addict. Indeed, the record shows the sole reason for Arndt's discharge was that Perrigo's "policy was to terminate if there was a positive drug test." (JE 1, 28; *See also* JE 8, 14; JE 16.) Arndt knew that to be true because he was familiar with Perrigo's employee handbook, he received trainings related to Perrigo's Drug Policy, and he was, in fact,

---

[2] In addition to bringing his claim under the Americans with Disabilities Act ("ADA"), Arndt is also pursuing relief under the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"). "The PWDCRA substantially mirrors the ADA, and a resolution of the ADA claims will generally, though not always, resolve the plaintiff's PWDCRA claim. Claims under the ADA and the PWDCRA are generally analyzed identically." *Hrdlicka v. Gen. Motors, LLC*, No. 22-1328, 2023 WL 1794255, at *7 (6th Cir. Feb. 7, 2023) (cleaned up).

experienced with the process because he was randomly drug tested in 2019. (JE 1, 20; JE 5; JE 6; JE 7.) In that instance, he submitted to testing, tested negative, and kept his job. (JE 7.)

Moreover, being subject to a random drug test could not possibly be evidence of a perceived disability where, as is the case here, an outside vendor randomly selected Arndt for testing. (JE 9, 28; JE 11.) Thus, all Arndt can show is that he failed a random drug test, and Perrigo terminated his employment for it. Such facts are insufficient to support a contention that Perrigo perceived him as having an impairment, and his attempt to establish a prima facie case of discrimination with speculation fails. *See also Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299 (6th Cir. 2000) (plaintiff failed to establish prima facie case where he offered nothing more than "mere conjecture" that the employer regarded him as having a drug addiction when it subjected him to a random drug test.); *Gecewicz v. Henry Ford Macomb Hosp. Corp.*, 683 F.3d 316, 322–23 (no prima facie case where employee offered no evidence that gave rise to a reasonable inference that her employer regarded her as disabled).

Even if Arndt could establish a prima facie case of disability discrimination, which he cannot, Perrigo can articulate a legitimate non-discriminatory reason for his discharge, which is that he failed a random drug screening that under policy and practice *always* results in discharge for those who test positive. (JE 8, 14, 30; JE 5).  See *Bailey*, 543 F. App'x at 524 (holding that "failure of a screen for illegal drugs" including marijuana is a legitimate reason for an adverse employment action).

Arndt cannot offer any evidence that Perrigo's legitimate non-discriminatory reason for his discharge is a pretext for an unlawful termination. "To establish pretext, a plaintiff may show that the defendant's reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Thompson v. Fresh*

*Prod., LLC*, 985 F.3d 509, 522 (6th Cir. 2021) (cleaned up.) Here, Arndt's drug test undisputedly showed a positive result for marijuana, and the test was confirmed by the MRO who, even after hearing Arndt's theories on Blistex contaminating the sample, never waivered from the conclusion that the test result was positive– thus, there is a basis in fact for Perrigo's actions. *See also Bailey*, 543 F. App'x at 524 ("Even if the positive result was in fact false, an employer's reliance on an erroneous result does not create a claim under the ADA absent an independent showing that the real reason for the firing was a disability.")

As to the second and third elements, Perrigo's Drug Policy clearly and unequivocally provides that Perrigo will discharge any employee who fails a random drug test.  Perrigo did exactly that here as it has done with every other employee who, like Arndt, fails a test. Arndt cannot show that he was treated differently than any other Perrigo employee who tested positive for drugs during a random drug screening, and he has no evidence of any motive outside of the Drug Policy for his discharge.  Therefore, Perrigo's stated reason for Arndt's discharge, which was adherence to its Drug Policy, did actually motivate its conduct. Given that Perrigo's Drug Policy is clearly stated, the accompanying processes and procedures are consistently followed, and it treats every other employee who fails a drug test in the same manner as it did Arndt, the failed drug test was sufficient to warrant discharge. Accordingly, Arndt has no evidence to establish that his termination was pretextual.

For these reasons, Perrigo respectfully requests that this Court grant it summary judgment on Arndt's regarded as disabled discrimination claim.

## II.   ARNDT'S AGE DISCRIMINATION CLAIM SHOULD BE DISMISSED

Arndt also alleges that Laue "did not like [him] because of his age, and he immediately gave [him] a bad review that was false," "targeted [him] for a drug test," and Perrigo "then terminated [him] for a reason that was a pretext for age discrimination." (PageID.5, Compl. ¶¶ 26-

27.) To successfully claim age discrimination under the Age Discrimination in Employment Act ("ADEA"), "the plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." *Flones v. Beaumont Health Sys.*, 567 F. App'x 399, 404 (6th Cir. 2014). Where, as here, a plaintiff brings (at most) only circumstantial evidence of causation, the Sixth Circuit employs "the burden-shifting framework of *McDonnell Douglas.*" *Id.* at 405. To establish a prima facie case of age discrimination, a plaintiff must show: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Id.* "Once the plaintiff succeeds in making out a prima facie case of age discrimination, the defendant must articulate some legitimate, nondiscriminatory reason for the termination. If the defendant meets this burden, then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext." *Id.* (cleaned up.)[3] Arndt cannot meet these requirements and thus his claim for age discrimination should be dismissed.

Here, Arndt cannot show any circumstances supporting an inference of discrimination. He alleges that only Laue discriminated against him because of his age. (PageID.5, Compl. ¶¶ 26-27; JE 1, 45.)   However, Arndt has not established that Laue had any involvement in the sole employment decision about which he is complaining – his discharge. Indeed, the record fully supports the opposite. At all touchpoints in administering Perrigo's Drug Policy, Laue was not

---

[3] Arndt brings his age discrimination claim under the ADEA as well as the Elliot-Larsen Civil Rights ACT ("ELCRA"). The Sixth Circuit has "traditionally analyzed ADEA and ELCRA claims using the same causation standard." *Lewis v. City of Detroit*, 702 F. App'x 274, 278 (6th Cir. 2017). The only difference between the two standards is that under the ADEA the plaintiff must establish that the plaintiff's age was the but-for cause of the adverse employment action and under the ELCRA the plaintiff must establish that age was a motivating or determining factor. *Id.* However, like in *Lewis*, Arndt has "failed to prove that age was either a but-for cause of, or a determining factor in, the adverse employment decisions at issue here" and thus the distinction is irrelevant. *Id.*

involved.  Perrigo's outside vendor, ASTS, not Laue, randomly selected Arndt for a drug screening. (JE 9, 28; JE 11.) Ceric, not Laue, was the sole person to make the decision to discharge Arndt. (JE 8, 14.) Importantly, Arndt admitted he has no evidence to show that Laue was involved in either Perrigo's Drug Policy administration or in his random drug screening selection. (JE 1, 23.) Ceric clarified that Arndt's work performance, which Arndt points to as his evidence of discrimination by Laue, had nothing to do with his discharge. (JE 8, 14.) Thus, Laue's role here, at most, is that of a person not involved in the decision-making process who happened to be Arndt's supervisor and provided him with a performance review. Arndt cannot produce any facts or evidence supporting an inference of discrimination sufficient to support a *prima facie* case and thus his claim fails.

Even assuming Arndt could establish a prima facie case, he cannot prove that Perrigo's offered reason for his discharge was a pretext for age discrimination. Arndt cannot sidestep the fact that he failed a random drug screening and instead simply conjure up a discrimination claim devoid of factual support.  Failing a drug test is a legitimate non-discriminatory reason to discharge an employee, especially where, as here, Perrigo's Drug Policy is well-known, well-publicized, and uniformly administered.  Further, and specific to Arndt, he was trained on the Drug Policy and, in fact, had been previously subject to it when he was randomly selected for a random drug test in 2019. (JE 5; JE 6; JE 8, 25, 30.)  *See Bailey*, 543 F. App'x at 524; *Coultas v. Carlisle Brake & Friction, Inc.*, 801 F. App'x 937, 939-40 (6th Cir. 2020) (holding that termination was not a pretext for age discrimination where an employee was terminated for failing a random drug test after being warned that termination would result if a drug test was failed and where other employees were treated in the same manner.). *See also,* discussion of pretext *supra.* Thus, any effort to establish

his case using circumstantial evidence fails, because Arndt cannot establish that the reason for his termination was pretextual.

For the above reasons, Arndt cannot establish that his discharge would not have occurred but for his age, and therefore, Perrigo respectfully requests that this Court grant it summary judgment on Arndt's age discrimination claim.

## CONCLUSION

In accordance with the arguments and authorities above, Perrigo respectfully requests that this Court grant Perrigo summary judgment and dismiss Arndt's case in its entirety.

Dated:  February 13, 2023                */s/ Jarrod H. Trombley*
                                         Edward J. Bardelli (P53849)
                                         Jarrod H. Trombley (P83517)
                                         WARNER NORCROSS + JUDD LLP
                                         Attorneys for Defendant
                                         150 Ottawa Ave NW, Ste. 1500
                                         Grand Rapids, MI 49503
                                         (616) 752-2000
                                         (616) 752-2500 (facsimile)
                                         ebardelli@wnj.com
                                         jtrombley@wnj.com